IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-01096-REB-CBS

POTTER VOICE TECHNOLOGIES LLC,

       Plaintiff,

v.

APPLE INC.,
GOOGLE INC.,
HTC AMERICA, INC.,
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
SONY MOBILE COMMUNICATIONS (U.S.A.) INC.,
LG ELECTRONICS MOBILECOMM U.S.A., INC.,
MOTOROLA MOBILITY LLC,
ZTE (USA) INC.,
KYOCERA INTERNATIONAL, INC.,
SHARP ELECTRONICS CORPORATION,
HUAWEI DEVICE USA INC.,
PANTECH WIRELESS, INC.,
RESEARCH IN MOTION LIMITED,
RESEARCH IN MOTION CORPORATION,
MICROSOFT CORPORATION, and
NOKIA INC.,

       Defendants.

_____

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO STRIKE
DECLARATION OF DAVID KLAUSNER**
_____

## INTRODUCTION

Potter Voice Technologies LLC ("Potter") relies on a single purported expert, David Klausner, in connection with its claim-construction briefing. But Mr. Klausner is the quintessential "expert for hire" having offered his services in almost two-hundred cases involving technologies as diverse as "patented methods for coupons," "online

dating software," "orthodonture appliance software," "source code involving petroleum refinery operations," "videoconferencing systems," and "ATM terminals."[1] In contrast with these diverse areas of computer science, the '659 patent concerns a highly specialized field of computer science called associative searching or associative computing. Specifically, the '659 patent purports to claim the use of associatively searching a tabular data structure to control a computer using spoken input.

Mr. Klausner's background or experience, however, does not suggest that he is knowledgeable in this highly specialized area. Even though Mr. Klausner has no formal education relating to this area, has not worked in the industry in this area, and has not previously testified about technology in this area, he provided an opinion regarding the proper construction for terms relating to associative searching.[2] Because Mr. Klausner is not qualified by specialized knowledge, training, or education to testify regarding associative searching, the Court should strike Mr. Klausner's declaration, at a minimum, as it pertains to associative searching.

The Court should also strike Mr. Klausner's declaration in its entirety because it does not properly represent expert opinion, and presents conclusory attorney argument masquerading as expert opinion. This is not surprising given that Mr. Klausner testified that he spent a *total* of 9.3 hours reviewing the '659 patent, the file history, all

---

[1] Resume of David Klausner ("Klausner Resume") at 7-27 (ECF # 269-2) in Exhibit 1.

[2] *See generally* Declaration of David Klausner in Support of Plaintiff Potter Voice Technologies LLC's Opening Claim Construction Brief ("Klausner Decl.") (ECF # 269-1) in Exhibit 2.

seventeen of the references cited on the face of the '659 patent, learning about associative search technology, and preparing his expert opinions and declaration on claim construction.[3]

**1.     THE COURT SHOULD STRIKE THE PORTIONS OF MR. KLAUSNER'S DECLARATION REGARDING ASSOCIATIVE SEARCHING.**

**A.     *Associative Searching Is a Highly Specialized Subfield of Parallel Computing.***

The '659 patent concerns, in part, a highly specialized field of computer science called associative searching (sometimes called "associative computing"). Associative searching began in the 1950s but came to prominence in the late 1980s and 1990s.[4] Associative searching is a specialized type of computer search that grew out of research involving parallel computer architecture. As described in the Declaration of Dr. Charles Weems, associative searching has particular characteristics that grew from its specialized development as part of parallel processing.[5]

The inventor of the '659 patent, Jerry Potter, recognizes how specialized the field of associative searching is. For instance, in Mr. Potter's essay, "*An Essay on the Need for a New Computing Paradigm*,"[6] Mr. Potter laments the fact that his preferred specialized fields — parallel processing and associative computing — are not well

---

[3]     Deposition of David Klausner (Nov. 15, 2012) ("Klausner Dep.") at 28:12-19; 39:20-40:1; 43:11-22; 58:3-6 in Exhibit 3.

[4]     Declaration of Charles Weems (Nov. 19, 2012) ("Weems Decl."), ¶¶ 8-9 (ECF # 286-1) in Exhibit 4.

[5]     See id. at ¶¶ 11-21.

[6]     Jerry Potter, An Essay on the Need for a New Computing Paradigm, available at http://www.cs.kent.edu/~potter/research/papers/paradigm.html in Exhibit 5.

represented in the general computer science curricula. He states, ". . . new computer paradigms, architectures and languages, which could address many of today[']s issues such as the inefficiency of multitasking operating systems and hardware, have been overlooked, even suppressed."[7] He goes on: "The wealth of alternative computer architectures, programming languages and alternative paradigms of earlier years, such as . . . ***data parallelism and associative computing***, have been abandoned."[8] Thus, as Mr. Potter recognizes, associative computing is an alternative paradigm, outside the norm of computer architectures taught in traditional computer science curricula, and at the time of Mr. Potter's article had been "abandoned."

Mr. Potter also described the highly specialized field of associative searching and computing in his article "*ASC: An Associative Computing Paradigm*."[9] In that article, Mr. Potter described ASC, which was the computer programing language Mr. Potter created and promoted to carry out associative searching and computing. He wrote: "Accessing data by ***associative searching*** rather than addresses and processing data in memory require a ***new programming style***."[10] That is, the old styles — perhaps even the styles with which Mr. Klausner is familiar — were inadequate. So, Mr. Potter explained his goal of developing a ***new*** programming paradigm that could take advantage of the specialized features of associative searching and computing: "One goal of our research

---

[7]    *Id.* at 1.

[8]    *Id.* (emphasis added).

[9]    Jerry Potter et al., ASC: An Associative-Computing Paradigm, 27 IEEE Computer 19-25 (Nov. 1994) in Exhibit 6.

[10]   *Id.* at 19 (emphasis added).

is to **develop a parallel programming paradigm** that is suitable for many diverse applications, is efficient to write and execute, and can be used on a wide range of computing engines, from PCs and workstations to massively parallel supercomputers."[11]

As Mr. Potter made clear, associative searching and associative computing are specialized fields of computer science. This is also seen in the history of associative searching described in detail in the declaration of Dr. Weems.[12] As such, an expert proposing to testify about these specialized fields needs specialized expertise. Mr. Klausner has none.

### B. *A Proposed Expert Witness Must Have Knowledge, Skill, Experience, Training, or Education in the Relevant Field.*

For expert testimony to be admissible, the proposed witness must qualify as an expert under Federal Rule of Evidence 702 by establishing his knowledge, skill, experience, training, or education in the relevant field. As the Tenth Circuit held in *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., LP*, "[i]n evaluating the admissibility of expert testimony under Federal Rule of Evidence 702, a district court must first determine whether an expert is qualified by knowledge, skill, experience, training, or education to render an opinion."[13] The proponent of the testimony bears the burden of showing that the proposed expert testimony satisfies the admissibility requirements.[14]

---

[11]  *Id.* (emphasis added).

[12]  *See* Weems Decl. at ¶¶ 8-9 and 11-21.

[13]  410 F. App'x 89, 93 (10th Cir. 2010) (internal quotation and citation omitted).

[14]  *United States v. Orr*, 692 F.3d 1079, 1091 (10th Cir. 2012).

In patent cases, it is settled law that **only** a person of **at least** ordinary skill in the art may be qualified as an expert.[15] Thus, as the Federal Circuit held in *Sundance, Inc. v. DeMonte Fabricating Ltd.*, "[t]estimony proffered by a witness lacking the relevant technical expertise fails the standard of admissibility under Fed. R. Evid. 702."[16]

A witness who may be qualified as an expert in one field may not be qualified as an expert in another, even if related, field.[17] For instance, in *Ronwin v. Bayer Corp.*, the Tenth Circuit affirmed the district court's finding that a witness, although a board-certified doctor, was not qualified as an expert because of his "lack of any practical experience or training with respect to [the particular drug at issue]."[18] In *Ralston v. Smith & Nephew Richards, Inc.*, the Tenth Circuit affirmed a district court's determination that a witness "did not possess the requisite qualifications to render an expert opinion concerning the adequacy of the warnings with respect to [a particular medical device]" despite the fact that she is "a board certified orthopedic surgeon" and is knowledgeable of the "general orthopedic and surgical principles and concepts."[19]

---

[15] *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008) ("We hold that it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art.").

[16] *Id.* at 1363.

[17] *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 37 (10th Cir. 1975) ("The capacity [to testify as an expert] is in every case a relative one, i.e., relative to the topic about which the person is asked to make his statement.").

[18] 332 F. App'x 508, 512-13 (10th Cir. 2009).

[19] 275 F.3d 965, 968-70 (10th Cir. 2001).

### C. *Mr. Klausner Does Not Have Knowledge, Skill, Experience, Training, or Education in the Field of Associative Computing.*

Mr. Klausner's declaration regarding associative searching does not meet the minimum requirements of Federal Rule of Evidence 702 because Plaintiff has not, and cannot, demonstrate that Mr. Klausner is "qualified as an expert by knowledge, skill, experience, training or education" as required by Federal Rule of Evidence 702. Putting aside Mr. Klausner's general experience, there is no evidence that Mr. Klausner is a person of ordinary skill, let alone an expert, in the field of associative computing or associative searching.

The '659 patent claims the use of associative searching techniques to control a computer using spoken input, specifically "associatively searching a tabular data structure."[20] The '659 patent does not cover *every* method of controlling digital computers using oral input. As the patentee acknowledged, controlling computers using oral input was long known in the art.[21] Instead, what supposedly made the '659 patent novel was its use of associative search techniques to search a "tabular data structure comprising labels" in implementing the speech control of a computer.[22] An associative

---

[20]   U.S. Patent No. 5,729,659 ("the '659 Patent") in <u>Exhibit 7</u> at 1:8-11 ("[T]he present invention relates to the use of rules related to natural language ***in connection with associative computing methods*** to facilitate the use of oral input to a computer system.") (emphasis added); *id.* at 2:21-24 ("The present invention uses oral input, natural language based rules, ***associative searching and tabular data structures*** to provide an easily learned means for controlling a digital computer."); *id.* at 18:54-57 (Claim 1); *id.* at 20:33-37 (Claim 22).

[21]   *See id.* at 1:52-65.

[22]   *See, e.g., id.* at 2:47-50; 18:54-57; 20:33-37.

search of a tabular data structure is a "particular and specialized type of search through a particular and specialized data structure."[23]

According to his resume, Mr. Klausner has a bachelor's degree in mathematics and a master's degree in electrical engineering.[24] He does not have a degree in computer science, and he admits that his mathematics and electrical engineering degrees did not involve any coursework relating to associative computing.[25] Further, at the time of the alleged invention, Mr. Klausner worked as a "consultant" on "a wide variety of PC, workstation and mainframe matters."[26] While Mr. Klausner may have "considerable experience with tabular data in the form of spreadsheets and database systems" and "the various forms in which the data may be specified and searched" generally,[27] his resume makes no mention of associative searching, parallel algorithms,

---

[23] Weems Decl. at ¶ 6; *see also id.* at ¶ 8 ("In 1995, parallel processing in general, and associative processing and searching in particular, were growing, specialized fields."). Dr. Weems served as Director of the Specialized Parallel Architectures Research Group at the alleged time of invention of the '659 patent, focusing on research in parallel processing, including associative computing and associative searching. *Id.* at ¶ 3. Dr. Weems' publications include a 1997 compilation of papers entitled, <u>Associative Processing and Processors</u>, which included an article authored by Jerry Potter, the named inventor of the '659 patent. *Id.*

[24] Klausner Resume at 1; *see also* Klausner Dep. at 18:3-8.

[25] Klausner Dep. at 26:18-25.

[26] Klausner Resume at 2.

[27] Klausner Dep. at 19:16-20:1.

and parallel processing.[28] Mr. Klausner has never attended a lecture, given a presentation, or written an article on associative searching.[29]

After he was engaged to provide an expert opinion on the construction of the term "associatively computing," Mr. Klausner did not educate himself by reading any books or articles on associative searching.[30] Mr. Klausner spent a total of only 9.3 hours preparing his expert opinions in this complex case.[31] Mr. Klausner testified that these 9.3 hours included his review of the '659 patent,[32] the file history for the '659 patent,[33] all seventeen of the references cited on the face of the '659 patent,[34] all of the time he spent learning about associative searching,[35] and the time spent preparing his opinions and declaration.[36]

None of the nearly two-hundred cases Mr. Klausner has been retained in related to associative searching.[37] Mr. Klausner's wide-ranging consulting experience suggests

---

[28] *See generally* Klausner Resume; s*ee also* Klausner Dep. at 26:3-17.

[29] Klausner Dep. at 28:3-11.

[30] *Id.* at 27:1-7. (Nor would simply reading books or articles after he had been retained in this litigation be sufficient to qualify Mr. Klausner as an expert in associative searching.)

[31] *Id.* at 28:12-19; 39:6-40:1; 43:11-22; 58:3-6.

[32] *Id.* at 43:11-14.

[33] *Id.*

[34] *Id.* at 43:17-22.

[35] *Id.* at 28:12-19.

[36] *See id.* at 40:15-20; 58:3-6.

[37] *See generally* Klausner Resume at 7-27. When pressed during his deposition, Mr. Klausner testified that he believed several consulting matters could have involved associative searches, but he was not certain. *See* Klausner Dep. at 23:19-26:2.

that he is, in the words of the Tenth Circuit in *Smith v. Sears Roebuck & Co.*, a professional "expert for hire" rather than "someone with independent credentials in the [relevant] field of engineering."[38] Indeed, the Tenth Circuit observed in *Smith* that weeding out experts for hire is "properly part of the court's gatekeeper role."[39] Simply put, Mr. Klausner does not have knowledge, skill, experience, training, or education in the field of associative computing. Accordingly, the Court should strike portions of his declaration related to the term "associatively searching."

### 2.   MR. KLAUSNER'S OTHER OPINIONS ARE CONCLUSORY AND UNRELIABLE.

For expert testimony to be admissible, it must assist in understanding the evidence or determine a fact in issue.[40] "[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."[41] Expert testimony "cannot be used to vary the plain language of the patent document."[42] Here, Mr. Klausner's declaration is comprised of conclusory, unsupported assertions that will not assist the Court in construing the disputed claim terms.

---

[38]  232 F. App'x 780, 783 (10th Cir. 2007).

[39]  *Id.*

[40]  FED. R. EVID. 702(a).

[41]  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005).

[42]  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332 (Fed. Cir. 2003); *see also Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1300 n.2 (Fed. Cir. 2005) (holding that it was appropriate for the district court not to rely on expert testimony in construing a means-plus-function limitation that was "either unsupported or contradicted by the express language of the written description") (internal citations omitted).

For example, Mr. Klausner's statements regarding the disputed means-plus-function claim terms are conclusory because Mr. Klausner does not explain *how* some alleged algorithm is specifically tied to the relevant recited functions.[43] In *Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech.*,[44] the Federal Circuit held that the required algorithm must include a "step-by-step process for performing the claimed functions." Mr. Klausner points to portions of the specification that he claims disclose software algorithms for performing the recited functions. But, even a cursory review of those cited portions reveals the absence of any algorithm. Moreover, those portions do not specifically refer to the recited functions, and Mr. Klausner does not explain *how* one of ordinary skill in the art would conclude that they do.

Mr. Klausner also does not explain *how* the identified algorithms are specifically tied to the relevant device within a computer.[45] The claims require that the "search means" and "content determination means" be "located within said digital computer."[46] The declaration acknowledges that a "search device 118" and "content determination

---

[43] *See e.g.*, Klausner Decl. at ¶¶ 32-34 (regarding "search means . . . for associatively searching said tabular data structure" and "means for identifying labels within said tabular data structure which relate to at least a first part of such input information") & ¶¶ 37-38 (regarding "content determination means . . . for determining content information relating to input information").

[44] 521 F.3d 1328, 1332 (2008); *see id.* at 1335 (holding that certain tables and figures were not algorithms, but were simply examples of the results of the operation of an unspecified algorithm).

[45] *See, e.g., In re Aoyama*, 656 F.3d 1293, 1297 (Fed. Cir. 2011) ("The Board erred by identifying structure that was not clearly linked or associated by the specification or prosecution history with the function actually recited in the claim . . . .").

[46] '659 patent at 20:33, 38-39.

device 124" are explicitly linked to claimed function but then ignores those two black boxes in its analysis.[47]

Further, Mr. Klausner's declaration ignores function explicitly recited by the claim, *e.g.*, "means for identifying labels."[48] 35 U.S.C. § 112, ¶ 6 "does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim."[49] Similarly, when discussing the indefiniteness of the term "said data," Mr. Klausner ignores the plain language of the claims and argues that the term "said data" (claim 4) refers to the term "data structure" (claim 1).[50] But "data" and "data structure" are different terms and presumed to have different meanings.[51]

In sum, Mr. Klausner's declaration is conclusory, unsupported, and contradicts the express language of the patent, and thus, fails to offer the fact finder "more than the lawyers can offer in argument."[52] As such, the Court should strike it in its entirety.

---

[47] Klausner Decl. at ¶¶ 27, 31, 35.

[48] *See, e.g., id.* at ¶ 30.

[49] *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

[50] Klausner Decl. at ¶¶ 23-24.

[51] *Innova/Pure Water v. Safari Water Filtration*, 381 F. 3d 1111, 1119 (Fed. Cir. 2004).

[52] *Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP*, Civil No. 04-2377 (ADC), 2008 WL 2446331, at *5 (D.P.R. June 16, 2008) ("It is not the job of an expert to parrot the opinions of counsel, but to bring to the jury more than the lawyers can offer in argument.") (internal quotation omitted).

## CONCLUSION

Mr. Klausner is not an expert in the field of associative searching. He has no specialized formal education or training in the field, and cannot even claim to have educated himself on this specialized field in the 9.3 hours he spent on this case. Mr. Klausner is a professional "expert for hire" and not "someone with independent credentials in the" relevant field before the Court. As such, the Klausner declaration is neither reliable nor helpful, and is, therefore, inadmissible. Microsoft respectfully requests the Court strike the Klausner declaration.

## RULE 7.1A CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1A, the undersigned counsel certifies that counsel for Defendant Microsoft Corporation conferred with counsel for Plaintiff Potter Voice Technologies LLC concerning this motion via email on February 26 and 28, 2013. Counsel for Potter stated that Potter opposes this motion.

Respectfully submitted,

March 1, 2013

**PERKINS COIE LLP**

| | |
|---|---|
|     /s/  Grant Kinsel<br>       Grant Kinsel<br><br>gkinsel@perkinscoie.com<br>1888 Century Park E., Suite 1700<br>Los Angeles, CA 90067<br>Tel:    310.788.3215<br>Fax:   310.788.3399 | Amanda J. Tessar<br>atessar@perkinscoie.com<br>Kourtney Mueller Merrill<br>kmerrill@perkinscoie.com<br>1900 16th Street, Suite 1400<br>Denver, CO 80202-5255<br>Tel:    303.291.2300<br>Fax:   303.291.2400 |

Attorneys for **MICROSOFT CORPORATION**