IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POTTER VOICE TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC., et al.,<br><br>    Defendants. | No. C 13-1710 CW<br><br>ORDER DENYING APPLE INC.'S MOTION TO DISMISS (Docket No. 175) |

In this patent infringement case, Defendant Apple Inc. (Apple) moves to dismiss Plaintiff Potter Voice Technologies, LLC's (PVT) willful and induced infringement claims against Apple. PVT opposes. The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-11. Having considered the papers submitted, the Court DENIES Apple's motion.

FACTUAL BACKGROUND

PVT is a Colorado corporation. Docket No. 153-2, Third Amended Complaint (3AC) ¶ 1. Apple is a California corporation. Id. ¶ 2. In 2010, Apple acquired a corporation called Siri, Inc., which in 2007 "spun off" from SRI International, the company that invented the Siri product now used on Apple's iPhone 4S and other similar products. Id. ¶¶ 24, 26. On July 19, 2012, PVT filed its 3AC against Apple, alleging infringement of U.S. Patent No. 5,729,659 (the '659 patent) through Apple products containing Siri

and Google Voice Search.[1]  Docket No. 153-2.  The 3AC alleges that Apple induced its customers to infringe the '659 patent and did so willfully.  Id. ¶ 25, 27.

PVT's willfulness allegations are as follows:

> 27. On information and belief, SRI International and the inventors of the following patents knew of the '659 patent and its contents from about 2004 when the '659 patent was cited in the prosecution of U.S. Patent Nos. 6,513,063, 6,691,151, 6,757,718, 6,859,931, 7,069,560, 7,036,128, 6,523,061, 6,742,021.  When Defendant Apple acquired Siri, Inc., it also acquired employees from Siri, Inc., including inventors of the above-listed patents.  On information and belief, Defendant Apple learned of the '659 patent and its contents when it acquired Siri, Inc. and Siri, Inc. employees.  And on information and belief, Defendant Apple willfully infringed the '659 patent thus entitling Potter Voice Technologies to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in litigating this action under 35 U.S.C. § 285.

Id. ¶ 27.  All of the eight patents referenced above (the SRI patents) issued in 2006 or earlier.  See Leary Decl., Exs. A-H (copies of the SRI patents).

PVT's induced infringement allegations consist of the following:

> 25. On information and belief, Defendant Apple indirectly infringes by actively inducing its customers to use Siri and/or Google Voice Search on the Apple iPhone 4S and all reasonably similar products.  On information and belief, Apple encourages, and intends for its customers to use Siri and/or Google Voice Search on the Apple iPhone 4S and all reasonably similar products in a manner that infringes the claims of the '659 patent.  Indeed, on its public website, Apple advertises and instructs customers on how to use Siri and/or Google Voice Search on the Apple iPhone 4S in a manner that infringes the '659 patent claims.  On information and

---

[1] This case was originally filed in the District of Colorado against Apple and several other defendants.  See Potter Voice Technologies LLC v. Apple Inc., et al., Case No. 1:12-CV-01096-REB-CBS.  Apple moved to sever PVT's claims against Apple and to transfer that part of the case to the Northern District of California, which the Colorado court granted.

2

>belief, Defendant Apple knew its actions would induce infringement of the '659 patent.  Indeed, Defendant Apple knew of the '659 patent and its contents from about in [sic] April 2010, when Defendant Apple acquired Siri, Inc. and its employees who had knowledge of the '659 patent.  Further, from the service of the initial Complaint forward, Defendant Apple had additional knowledge of the '659 patent and knew its actions would induce its customers' infringement of the '659 patent.

3AC ¶ 25.

## LEGAL STANDARDS

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).  The Court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the Court may take judicial notice. Id. at 1061.  However, the Court need not accept legal conclusions, including "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

3

DISCUSSION

I.  Willful Infringement

"Because patent infringement is a strict liability offense, the nature of the offense is only relevant in determining whether enhanced damages are warranted." In re Seagate Tech., LLC, 497 F.3d 1360, 1368 (Fed. Cir. 2007).  An award of enhanced damages under 35 U.S.C. § 284, however, requires a showing of willful infringement. Id. (citing history of Federal Circuit case law establishing that enhanced damages must be tied to a finding of willful infringement).  A finding of willfulness allows the Court to multiply any patent infringement damages up to threefold, as well as award attorneys' fees.  35 U.S.C. §§ 284, 285.  The infringer acts willfully when it was "aware of the asserted patent, but nonetheless acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 860 (Fed. Cir. 2010); In re Seagate, 497 F.3d at 1371.  "Whether an act is willful is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances." Sealant Sys. Int'l, Inc. v. TEK Global, 2012 WL 13662, at *2 (N.D. Cal.) (quoting Gustafson, Inc. v. Intersystems Indus. Products, Inc., 897 F.2d 508, 510-511 (Fed. Cir. 1990).

Apple disputes whether PVT adequately plead Apple's knowledge of the '659 patent.  While courts have emphasized the importance

4

of pleading the defendant's knowledge of the patent-in-suit,[2] when, as here, the defendant is a corporation, this pleading requirement should be evaluated through the scope of corporate law and agency principles.[3]  It is well established that corporations act through their employees and an agent's knowledge will generally be imputed to the corporate principal so long as employees are acting within the scope of their employment. Kellogg Brown & Root Servs., Inc. v. United States, 728 F.3d 1348, 1369 (Fed. Cir. 2013).  See also i4i Ltd. P'ship, 598 F.3d at 860 (finding substantial evidence supporting a finding of willful infringement where Microsoft employees received i4i's sales kit citing the asserted patent and went to i4i software demonstrations); St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co., 2012 WL 1134318, at *3 (D. Del.) (ruling that the plaintiff properly plead willful infringement by alleging the patents-in-suit were often called to the attention of HP personnel and representatives).  To require that the corporation is aware of the asserted patent is to say that certain of the corporation's employees have knowledge of that patent.  See id.  In the context

---

[2] See, e.g., Vasudevan Software, Inc. v. TIBCO Software Inc., 2012 WL 1831543, at *2 (N.D. Cal.) (quoting State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1236 (Fed. Cir. 1986)) ("to willfully infringe a patent, the patent must exist, and one must have knowledge of it").

[3] Apple cites a number of cases for the proposition that knowledge cannot be imputed between a parent and a subsidiary company.  See, e.g., Benton v. Cameco Corp., 375 F.3d 1070, 1081 (10th Cir. 2004).  These cases are inapposite because PVT alleges Apple acquired Siri, Inc. and its employees, not that Apple owns Siri, Inc. as a wholly-owned subsidiary.  Therefore, employer-employee analysis is more appropriate here.

5

of willful infringement, it is safe to say that the employees required to have knowledge of the asserted patent must have some connection to the decision willfully to infringe. Cf. i4i Ltd. P'ship, 598 F.3d at 860; In re Seagate, 497 F.3d at 1371.

According to PVT's complaint, Apple learned of the '659 patent when it acquired Siri, Inc. employees who were the inventors of the SRI patents. The former Siri, Inc. employees were aware of the '659 patent because it was cited to them in the prosecution history of the SRI patents. These employees took their knowledge of the '659 patent to Apple when they became Apple employees in about 2007. Apple, having learned of the likelihood of infringement of the '659 patent, nevertheless acted in a way that infringed. This is not a bare recitation of the legal elements of willful infringement, but constitutes facts describing how the alleged infringer came to learn of the patent in suit.

Apple asserts that PVT's allegations fall short of the "plausibility" standard set by Iqbal and Twombly. While willful infringement is not equal to fraud and therefore is not subject to the stringent Rule 9(b) particularity requirement, the Iqbal and Twombly standards still apply. See Mitutoyo Corp. v. Cent. Purchasing LLC, 499 F.3d 1284, 1290 (Fed. Cir. 2007). According to Apple, PVT's theory of Apple's knowledge is unlikely because the '659 patent was never cited by the examiners of the SRI patents, nor was it the subject of any office action or rejection. Apple admits that the inventors of the later patents submitted an Information Disclosure Statement (IDS) naming the '659 patent as prior art, but argues the inventors would not have remembered the '659 patent because it was listed among several other references.

6

See Leary Decl., Ex. I.  Even if the inventors knew about the '659 patent during the prosecution of the SRI patents, Apple asserts it is not plausible that they would have remembered the import of the '659 patent when they joined Apple several years later.

Apple's arguments, especially those that the Siri inventors would have forgotten the '659 patent, go to the weight of the evidence rather than the sufficiency of PVT's allegations.  At the motion to dismiss stage, the Court does not undertake a full evaluation of "probability," but simply asks for "more than a sheer possibility that a defendant has acted unlawfully."  See Iqbal, 556 U.S. at 678.  With all of its allegations accepted as true, PVT demonstrates more than a sheer possibility that Apple was aware of the asserted patent.  One can reasonably infer that the former SRI employees, who themselves knew of the '659 patent, later had a connection to Apple's willful infringement.  As demonstrated by Apple's robust factual argument, PVT's complaint "plead[s] facts sufficient to place the alleged infringer on notice as to what he must defend."  McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357 (Fed. Cir. 2007).

In its reply, Apple also asserts that PVT's post-filing willful infringement allegations should be struck from the complaint.  Apple argues that PVT makes only a bare assertion that Apple continues to infringe after the filing of this suit, which is inadequate to support a willful infringement claim.  But PVT's willful infringement claim does not rest on post-filing conduct alone.  In the case cited by Apple, the court discussed whether post-filing conduct standing alone could state a claim for willful infringement.  Vasudevan Software, Inc., 2012 WL 1831543, at *5

7

(finding insufficient pre-filing allegations, and only a "mere suggestion" that infringement continued post-filing, which as a whole was inadequate to state a claim for willful infringement). This argument is inapplicable here because the Court has already found PVT's factual allegations of Apple's pre-filing conduct to be sufficient, so there is no need to consider whether PVT's willful infringement claim can stand on post-filing conduct alone.

In any event, post-filing willful infringement is generally not a question of adequacy of the pleadings, but a factual one to be resolved later. This is because a willfulness claim filed in the original complaint may only be based on conduct that occurred before filing that complaint. In re Seagate, 497 F.3d at 1374. "By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction," which is usually sufficient to combat willful infringement. Id. As Apple points out, the fact that the plaintiff has not sought a preliminary injunction weighs strongly against awarding damages for post-filing willful infringement. See id. ("A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct."). However, other factors may weigh into that inquiry, including the developing course of the present litigation, and so it is inappropriate to resolve the issue of damages at the motion to dismiss stage, where the Court is limited to the four corners of the complaint.

II.  Induced Infringement Claim

To state a claim that the defendant induced infringement, the plaintiff must not only allege that the defendant knew about the

8

1 infringement, but also that the defendant had a "specific intent"
2 to encourage that infringement. Broadcom Corp. v. Qualcomm Inc.,
3 543 F.3d 683, 697-98 (Fed. Cir. 2008); DSU Med. Corp. v. JMS Co.,
4 Ltd., 471 F.3d 1293, 1305 (Fed. Cir. 2006). To survive a motion
5 to dismiss, PVT's allegations must contain facts that, if true,
6 plausibly show that Apple knew or should have known that its
7 customers' acts infringed and specifically intended their
8 customers to infringe. In re Bill of Lading Transmission &
9 Processing Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed. Cir.
10 2012).

11 PVT's complaint states that Apple indirectly infringes by
12 actively inducing its customers to use Siri and Google Voice
13 Search on Apple's iPhone 4S and other reasonably similar products.
14 Apple again challenges the sufficiency of PVT's allegations of
15 Apple's knowledge of the asserted patent, which the Court has
16 already found to be sufficient. Apple next contends that PVT
17 fails to allege any specific intent. But the facts in the
18 complaint do support a finding of specific intent. PVT identifies
19 both the direct infringer (customers using the Apple iPhone 4S and
20 other similar products) and the way in which Apple encourages
21 others to infringe (by instructing and encouraging them on its
22 public website to use infringing features). Further, Apple's
23 argument that PVT never states in so many words that Apple
24 "intended" customers to infringe is incorrect, and is especially
25 puzzling because the complaint Apple cites in contrast actually
26 mirrors PVT's complaint. Compare In re Bill of Lading, 681 F.3d
27 at 1341 (finding adequate allegations that "DriverTech
28 affirmatively sells, offers to sell, encourages, and **intends for**

9

**its customers to use** the DT4000 TruckPC and DTScan In-Cab Scanning in conjunction with other applications and processes, and **in a manner that infringes** on the patented process claimed in the '078 Patent") (emphasis added) and 3AC ¶ 25 (PVT's allegations that, "On information and belief, Apple encourages, and **intends for its customers to use** Siri and/or Google Voice Search on the Apple iPhone 4S and all reasonably similar products **in a manner that infringes** the claims of the '659 patent") (emphasis added).  By identifying the direct infringer, the mechanism by which Apple encouraged the infringement, and by stating that Apple intended for infringement to occur, PVT properly states a claim for induced infringement.

CONCLUSION

Apple's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: 1/6/2014

CLAUDIA WILKEN
United States District Judge

10